UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| ARLENE F. BALL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:23CV65 HEA |
| | ) |
| GOODLEAP, LLC, et al., | ) |
| | ) |
| Defendants. | ) |

**<u>OPINION, MEMORANDUM AND ORDER</u>**

This matter is before the Court on Plaintiff's Motion to Reopen Case and to Stay as to Defendant Titan Solar Power Mo, Inc. Only, [Doc. No. 77]. Plaintiff has not filed an opposition to the Motion. Defendant Goodleap opposes the Motion and further seeks an Order compelling arbitration and stay. For the reasons set forth below, Goodleap's Motion to Compel Arbitration will be granted.

**Facts and Background[1]**

Plaintiff's Amended Complaint alleges in February 2023, Plaintiff was contacted by Defendant Titan Solar agent Defendant, or its agent, Solar Match, by telephone, soliciting the sale of solar panels. Plaintiff indicated that she was interested in getting some information regarding the solar panels. Plaintiff was not interested in signing up for solar panel services at that time. However, a

---

[1] The recitation of facts is set forth for the purposes of this Opinion and in no way relieves the parties from the necessary proof of the facts in later proceedings.

salesperson for Defendant attempted to sell her solar panel service. The service package presented by Defendant was represented to cost Plaintiff nothing as the cost of the system would be covered by a government program. Plaintiff was not provided with a copy of any documentation by Defendant during this February 20, 2023 visit.

Prior to May 18, 2023, Defendant sent its agent to physically evaluate Plaintiff's house in Ralls County, Missouri for purposes of installing solar panels. During this visit, Plaintiff attempted to ask Defendant questions related to the process of installing solar panels, but Defendant avoided talking to Plaintiff.

On multiple occasions, Defendant informed Plaintiff that the solar panels could be installed on the roof of her residence in Ralls County, Missouri at no cost to Plaintiff because it was part of a government program.

Plaintiff objected to the placement of solar panels on her roof.

On May 18, 2023, Defendant electronically sent Plaintiff documentation purporting to be a survey plan for installation and location for solar panels. Plaintiff could neither read the documents nor print them out due to the size of the document. The documents electronically provided to Plaintiff at this time included a "Titan Solar Power Purchase Agreement" purported to be a contract allegedly signed by Plaintiff on or about February 20, 2023. Plaintiff did not sign the "Titan

Solar Power Purchase Agreement" and a copy of it was not left with her in February 2023.

After much persistence, Plaintiff allowed Defendant to place solar panels on her roof under the understanding that Plaintiff was participating in a government program that would allow her to utilize the solar panels at no cost to her.

In the course of Defendants' actions, Defendant Goodleap used or obtained Plaintiff's credit reports from the national consumer reporting agencies on or about February 20, 2023, and on or about July 18, 2023.

Subsequent to the installation of the solar panels, Defendant Goodleap contacted Plaintiff and advised her that Plaintiff now owed Defendants Goodleap approximately $41,074.30 for the solar panels at an interest rate of 4.49% and maturity date of July 18, 2048.

Plaintiff claims she later discovered that her name had been forged on a note involving Defendant Goodleap. Plaintiff had never seen the Goodleap note as it was not provided to her. Plaintiff believes that the Goodleap note is materially different from the Note that would have been provided to her by Defendant Titan Solar.
The installation of the solar panels has caused damage to Plaintiff's roof.

On August 4, 2023, Plaintiff filed a police report with the Ralls County

Sheriff's Office reporting the fraud. The report was taken by Sergeant Benjamin of the Ralls County Sheriff's Office.

Plaintiff's Amended Complaint alleges the following claims: Count I, violation of the Fair Credit Reporting Act; Count II, violation of the Missouri Merchandising Practices Act; Count III, violation of the Truth in Lending Act; Count IV, Rescission; Count V, Slander of Title.

On July 10, 2024, Defendant Titan Solar Power MO, Inc. filed a Suggestion of Bankruptcy advising that it had filed a voluntary Chapter 7 Petition for Bankruptcy in the United States Bankruptcy Court for the District of Arizona, Case Number 2:24BK05234. This Bankruptcy case is still Pending. On January 23, 2025, the Court stayed this matter pending the resolution of the bankruptcy case.

## Discussion

Plaintiff moves to lift the stay as to Defendant Goodleap since Goodleap is not a debtor in bankruptcy.

> The automatic stay applies to actions against the debtor, 11 U.S.C. § 362(a)(1), and actions "to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," 11 U.S.C. § 362(a)(3). The automatic stay does not, in general, apply to actions against third parties. See, e.g., *Sav–A–Trip, Inc. v. Belfort*, 164 F.3d 1137, 1139 (8th Cir.1999) (holding that an automatic stay applicable to a defendant firm and one of its employees did not extend to nonbankrupt codefendants). "The only exception to this rule that any of the circuits recognize seems to relate only to nonbankrupt codefendants in 'unusual circumstances.' " *Croyden Assoc's v. Alleco, Inc.*, 969 F.2d 675, 677 (8th Cir.1992) (quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir.1986)). "The unusual circumstances in which the bankruptcy court can

4

stay cases against non-debtors are rare." *Ritchie Capital Mgmt., L.L.C. v. Jeffries*, 653 F.3d 755, 762 (8th Cir.2011).

*In re Panther Mountain Land Dev., LLC*, 686 F.3d 916, 921 (8th Cir. 2012)

Goodleap urges the Court to keep the stay intact. Although not a debtor, Goodleap argues this is an unusual circumstance which allows the Court to extend the stay to it.

> A stay "is not available to non-bankrupt codefendants, 'even if they are in a similar legal or factual nexus with the debtor.' " *Id*. (citation omitted). However, there may be rare "unusual circumstances" that would warrant extending a stay to non-debtor defendants. *In re Panther Mountain Land Dev., LLC*, 686 F.3d 916, 920 (8th Cir. 2012). "They typically arise where 'there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.' " *Ritchie Cap. Mgmt, L.L.C. v. Jeffries*, 653 F.3d 755, 762-763 (8th Cir. 2011) (citation omitted). Thus, a stay may be approved for a non-debtor defendant when the claim against the non-debtor " 'will have an immediate adverse economic consequence for the debtor's estate.' " *Id*. (*quoting Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287-88 (2nd Cir. 2003)).

*Swallow v. Corizon, LLC*, No. 4:18 CV 1045 JMB, 2023 WL 2967785, at *2 (E.D. Mo. Apr. 17, 2023).

Goodleap contends that since it has an indemnification agreement with Titan, it is entitled to the stay as well. A clear distinction, however, exists between non-debtors with indemnification agreements with the debtor and the instant situation. Unlike the cases which allow the stay to extend to the nonbankrupt defendant, Titan's bankruptcy proceeding was filed under Chapter 7 of the

5

Bankruptcy Code. Chapter 7 is for debtors with no assets, as opposed to Chapter 11 Reorganization Bankruptcies wherein the debtor has assets which will be used to create a bankruptcy estate from which the debtor will create a reorganization plan for repayment to the creditors. As Plaintiff points out, there is no bankruptcy estate in a Chapter 7 proceeding, and Titan has no estate from which to repay its creditors. Thus, Defendant has not sufficiently established the unusual circumstance which would justify further extension of the automatic bankruptcy stay as to Goodleap.

That being said, however, the Court must address Goodleap's Motion to Compel Arbitration and correspondingly impose a stay pending the arbitration.

Plaintiff contends she did not enter into the arbitration agreement because she was defrauded by Defendant Titan and its agents. A party who has not agreed to arbitrate a dispute cannot be forced to do so. *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986). Defendant Goodleap moves to compel arbitration under the Federal Arbitration Act ("FAA"). The FAA applies to contracts evidencing transactions "involving commerce." 9 U.S.C. § 2; *Hoffman v. Cargill Inc.*, 236 F.3d 458, 461 (8th Cir. 2001).

Under the FAA:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit

6

arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. The FAA reflects a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). "[C]ourts must place arbitration agreements on an equal footing with other contracts" and enforce them according to their terms. *Id*. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Lyster v. Ryan's Fam. Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001). Consequently, when there is an enforceable agreement to arbitrate, federal courts "shall make an order directing the parties to proceed to arbitration." 9 U.S.C. § 4. The "court's role under the FAA is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute." *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004). See also *Foster v. Walmart, Inc.*, 15 F.4th 860, 862 (8th Cir. 2021).

There is a public policy favoring the resolution of disputes via arbitration. *Moeller v. New Prime Inc.*, No. 6:25-CV-03031-MDH, 2025 WL 1297238, at *1–5 (W.D. Mo. May 5, 2025)(citing *Coleman v. Bristol Care, Inc.*, No. 6:18-CV-04069-MDH, 2018 WL 3848821, at *3 (W.D. Mo. Aug. 13, 2018 and *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987)). An

7

arbitration may be compelled under a broad arbitration clause so long as the underlying factual allegations touch on matters covered by the provisions. *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1199 (8th Cir. 2008) (internal citations omitted).

The Court next concludes that Plaintiffs' fraud claims do not provide grounds for denying Defendant's Motion.

A claim of fraud can bar enforcement of an arbitration agreement only "if the claim is fraud in the inducement of the arbitration clause itself – an issue which goes to the making of the agreement to arbitrate .... But where the clam was one of fraud in the inducement of the contract generally, *Prima Paint [Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)] declared that the issue was for the arbitrator." *Koch v. Compucredit Corp.*, 543 F.3d 460, 464 (8th Cir. 2008) (quotation omitted); see also *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006); *Benchmark Ins. Co. v. SUNZ Ins. Co.,* 36 F.4th 766, 772 (8th Cir. 2022).

Plaintiff alleges fraud generally in order to invalidate the contracts as a whole, but she does not allege fraud specifically with respect to the arbitration clauses; therefore, her fraud claim does not render the arbitration provisions unenforceable.

## Conclusion

8

For the reasons stated herein, Plaintiff's Motion to Reopen Case and to Stay as to Defendant Titan Solar Power Mo, Inc. Only, [Doc. No. 77], is **DENIED**. Defendant Goodleap's Motion to Compel Arbitration and Stay These Proceedings, [Doc. No. 62] is **GRANTED**. The Court finds good cause to stay this case with respect to Plaintiff's claims against Defendant until such a time as arbitration process is concluded.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff and Defendant are **COMPELLED** to submit to arbitration.

**IT IS FURTHER ORDERED** that Defendant shall provide the Court with a status report every 120 days until such time as the arbitration of Plaintiff's claims is completed.

Dated this 17th day of November, 2025.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE